J-S32041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| IN THE INTEREST OF: H.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1314 EDA 2024 |

Appeal from the Order Entered March 25, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000586-2022

| IN THE INTEREST OF: H.T.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1315 EDA 2024 |

Appeal from the Decree Entered March 25, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000412-2023

BEFORE:  LAZARUS, P.J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED SEPTEMBER 23, 2024**

Appellant, K.S. ("Mother"), appeals *nunc pro tunc* from the decree and order entered in the Philadelphia County Court of Common Pleas, granting the petition of Appellee, Philadelphia County Department of Human Services ("DHS"), for involuntary termination of Mother's parental rights to her minor child, H.B. ("Child"), and changing the placement goal to adoption.  We affirm.

The relevant facts and procedural history of this appeal are as follows.

Child was born in April 2022. At that time, Mother herself was a dependent child, and she had an active case with DHS. (*See* Petition for Goal Change to Adoption, filed 10/17/23, at Exhibit A, ¶c). DHS obtained a protective custody order for Mother on April 22, 2022. DHS then placed Mother and Child at a home for teenage mothers and their babies. DHS subsequently received reports that Mother was mishandling Child, "swinging [Child] by his arms" and "improperly feeding [Child] by propping a bottle up to feed him[.]" (*Id.* at Exhibit A, ¶¶d, e). On June 24, 2022, DHS obtained a protective custody order for Child. That same day, Child was placed in foster care. Child has remained in foster care ever since.

The court conducted a shelter care hearing on June 26, 2022. At that time, the court lifted the protective custody order and permitted the temporary commitment of Child to continue. The court also directed Mother to attend supervised visits with Child. On September 14, 2022, the court adjudicated Child dependent. Mother received single case plan objectives, including directives to obtain appropriate housing, engage in school, and follow-up on referrals to the Achieving Reunification Center and the Achieving Independence Center for parenting and related services. (*Id.* at Exhibit A, ¶k). Thereafter, Mother minimally complied with her goals.

On October 17, 2023, DHS filed a petition for the involuntary termination of parental rights of Mother and the putative fathers.[1] DHS also

---

[1] The court terminated the parental rights of the putative fathers, D.B. and J.H., on March 25, 2024, and they are not parties on appeal.

filed corresponding petitions seeking to change Child's goal to adoption. The court conducted a termination hearing on March 25, 2024. Although Mother did not attend the hearing, she was represented by counsel. At the start of the hearing, counsel immediately objected to DHS's attempts to serve Mother with notice of the termination proceedings. (*See* N.T. Termination Hearing, 3/25/24, at 6-7). DHS responded by presenting exhibits, as well as testimony from Beverly Harrigan, Mother's case manager. After receiving Ms. Harrigan's testimony and additional argument from counsel, the court found that DHS "made reasonable efforts" to serve Mother with notice of the proceedings. (*Id.* at 10). Following the hearing, the court entered a decree terminating Mother's parental rights to Child. The court entered a separate order noting the change of Child's goal to adoption.

On April 26, 2024, Mother filed a petition seeking leave to file a notice of appeal *nunc pro tunc*. The court granted Mother's petition on May 10, 2024. On May 13, 2024, Mother filed separate *nunc pro tunc* notices of appeal and concise statements of errors. This Court consolidated the matters *sua sponte* on June 3, 2024.

Mother now raises one issue for this Court's review:

> Whether it was a violation of Mother's due process rights by not providing Mother notice of the termination of parental rights and goal change petitions and notice of the termination of parental rights and goal change hearings, thereby denying Mother an opportunity to be heard.

(Mother's Brief at 5).

Appellate review in termination of parental rights cases implicates the following principles:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the [trial] court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. However, [w]e must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 667 Pa. 268, 294-95, 255 A.3d 343, 358-59 (2021) (internal citations and quotation marks omitted).

On appeal, Mother acknowledges that she was not present at the termination hearing. Mother insists, however, that DHS did not make a good faith effort to notify her about the hearing. Mother complains that DHS

conducted a Parent Locator Search ("PLS") on September 18, 2023,[2] more than six months before the termination hearing. Rather than revealing Mother's actual address, Mother notes that the PLS provided DHS with the address for the hospital where Child was born. Complicating matters further, Mother maintains that DHS and Ms. Harrigan knew that Mother did not have stable housing or consistent telephone access throughout the life of this case. Under these circumstances, Mother argues that "[s]ending termination of parental rights/goal change petitions to … an address from a PLS that is six months old is not adequate service." (Mother's Brief at 13). Mother concludes that the court abused its discretion and violated Mother's due process rights by finding that DHS provided proper notice of the termination proceedings. We disagree.

Issues concerning proper service of notice in termination proceedings have a constitutional underpinning:

> The Fourteenth Amendment provides, in relevant part: "nor shall the State deprive any person of life, liberty, or property, without due process of law…." Among the oldest of "fundamental liberty interests" recognized by the Constitution is a parent's right to make decisions concerning the care, custody, and control of his or her children.
>
> Naturally then, it is well-settled that any individual whose parental rights are to be terminated must be afforded due process—that is, certain procedural safeguards. Due

---

[2] At the termination hearing, DHS's counsel said that the PLS occurred on September 15, 2023. (**See** N.T. Termination Hearing at 5). Nevertheless, the "Date of Investigation" field on the PLS indicated that the investigation occurred on September 18, 2023. (**See** DHS's Exhibit 1, submitted 3/25/24).

process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter. Although we have explained that due process is flexible and calls for such procedural protections as the situation demands, we are unwilling to allow the termination of parental rights without strict compliance with the procedures set forth by the Legislature….

*In re Adoption of K.M.D.*, 261 A.3d 1055, 1059 (Pa.Super. 2021) (internal citations and some quotation marks omitted).

The Adoption Act governs notice for involuntary termination hearings as follows:

> **§ 2513. Hearing**
>
> **(a)     Time.—**The court shall fix a time for hearing on a petition filed under section 2512 (relating to petition for involuntary termination) which shall be not less than ten days after filing of the petition.
>
> **(b)     Notice.—**At least ten days' notice shall be given to the parent or parents, putative father, or parent of a minor parent whose rights are to be terminated, by personal service or by registered mail to his or their last known address or by such other means as the court may require. A copy of the notice shall be given in the same manner to the other parent, putative father or parent or guardian of a minor parent whose rights are to be terminated.
>
> *     *     *

23 Pa.C.S.A. § 2513(a)-(b). Additionally, the Pennsylvania Rules of Orphans' Court provide, in pertinent part:

> **Rule 15.4.  Notice of Hearing to Terminate Parental Rights; Method and Time**
>
> *     *     *

**(b)**     **Method of Notice.**

\*     \*     \*

(3)(A)     For a proceeding under Rule 15.10 (relating to Involuntary Termination of Parental Rights), every person entitled to notice as provided in 23 Pa.C.S. § 2513(b) shall be provided with notice of the hearing by one of the following means:

(i)          personal service;

(ii)         registered or certified mail with delivery restricted to the addressee only and a return receipt requested mailed to the person's residence, location where he or she is known to be staying, or business where he or she is known to be currently employed; or

(iii)        such other means including electronic transmission as the court may require under the facts of the individual case.

\*     \*     \*

(4)          If service cannot be obtained upon the person whose parental rights are sought to be terminated either because service is refused or unsuccessful and no alternative service is directed by the court or because the person's identity or whereabouts are unknown after reasonable investigation, then notice by publication shall be given as directed by the court, after a motion in accordance with Pa.R.C.P. No. 430(a) and upon a finding by the court that a reasonable investigation was made.

Pa.O.C. 15.4(b)(3)(A), (4).

"Strict compliance is warranted in termination matters because of the gravity of such cases." ***Adoption of K.M.D., supra*** at 1059.

We add that this Court has required a good faith effort to provide notice to a parent, at his or her correct address, of a hearing that may result in the termination of the individual's parental rights.  Finally, we note the children

- 7 -

and youth services agency bears the burden to prove proper service by its affirmative act. As disappointing and uncooperative a respondent's acts of refusing service may be, it is the petitioner who must prove service by … affirmative acts, and not the [respondent] by [his or] her acts of omission or rejection.

*Id.* at 1060 (internal citations and quotation marks omitted).

Instantly, DHS presented various exhibits to demonstrate its attempts to serve Mother with the termination/goal change petitions and notice of the hearing. In addition to evidence of the PLS from September 18, 2023, DHS submitted an earlier PLS from July 6, 2022, which returned no information for Mother's possible address. (*See* DHS's Exhibit 4, submitted 3/25/24). Regarding the termination and goal change petitions, DHS attempted to serve the petitions by using a process server. The process server went to a residential property at East Wister Street in Philadelphia, which DHS recognized as "a prior address of Mother's[.]" (N.T. Termination Hearing at 6). After three attempts, however, no one at the residence answered the door, and the process server left the petitions at the door. (*See* DHS's Exhibit 7, submitted 3/25/24). DHS also sent the petitions to the East Wister Street address via certified mail. Further, the certified record confirms that DHS electronically served the petitions on Mother's counsel.

Regarding the termination hearing, DHS sent a subpoena to Mother at the Old York Road address produced by the 2023 PLS. (*See* DHS's Exhibit 5, submitted 3/25/24). The subpoena, sent via certified mail on March 18, 2024, ordered Mother to appear at the March 2024 hearing. DHS also sent the

- 8 -

subpoena to Mother at the East Wister Street address via certified mail. (*See id.*)  In addition to these mailings, DHS presented testimony from Ms. Harrigan, who indicated that she personally informed Mother about the date of the termination hearing.  Specifically, Ms. Harrigan testified that she spoke with Mother on Friday, March 22, 2024.  At that time, Ms. Harrigan "reminded her" about the date and time for the termination hearing.  (N.T. Termination Hearing at 8).  Ms. Harrigan further testified that she spoke with Mother "the week before that as well." (*Id.*)  Despite these conversations, Mother did not supply Ms. Harrigan with a current address.  When Ms. Harrigan asked Mother about her current address, Mother "evaded the question." (*Id.*)

Later, DHS's counsel asked Ms. Harrigan about Mother's various addresses throughout the life of this case.  Ms. Harrigan responded:

> The—they weren't really addresses.  The last—within the last year I would say she was with her father, but that was temporary.  And then she went to live with a friend.  And then the friend … who she said is [Child's] biological father.  She lived there temporarily.  Then she left that friend, went to another friend.  So it was always different people's places.  There was never anything permanent outside of her father's address.

(*Id.* at 16).  Thus, Ms. Harrigan did not have an address for Mother that she could provide to DHS.

In analyzing Mother's claim on appeal, the court initially emphasized Ms. Harrigan's testimony regarding Mother's unavailability:

> Mother's absence and unavailability have been recurrent themes throughout the pendency of this matter.  Ms. Harrigan reported that Mother had changed her telephone

- 9 -

number more than ten times since she began supervising the case which made contacting her very challenging. [Ms. Harrigan] also pointed out that her own number has remained the same the entire time. She noted that she provided her number to Mother, Mother's father, Mother's sisters, and Mother's grandmother so that someone in the family could always make contact with her.

(Trial Court Opinion, filed 7/12/24, at 10) (record citation omitted). The court later reiterated that DHS made reasonable efforts to serve Mother with notice of the termination hearing:

This [c]ourt finds that DHS made reasonable efforts to locate Mother who very clearly did not want to be located. This [c]ourt also finds Ms. Harrigan's testimony that she spoke to Mother and advised her of the upcoming hearing on at least two occasions to be credible. Mother cannot be rewarded for winning a game of hide and seek with DHS, and her actions in doing so were consistent with her overall lack of effort and failure to make any progress toward meeting her SCP objectives throughout the pendency of this case.

(*Id.* at 13).

We accept the court's analysis. Contrary to Mother's argument on appeal, this is not a case where DHS only sent notice of the termination proceedings to the hospital where Mother gave birth. Rather, DHS also utilized Mother's prior address on East Wister Street when attempting to comply with the notice procedures set forth by our legislature. Mother, however, thwarted DHS's attempts at service due to her frequent relocations. *Compare Adoption of K.M.D., supra* at 1061-64 (emphasizing that child welfare agency provided defective service of termination petitions via email when agency **knew** parents' address; agency was required to make good faith effort

- 10 -

to serve parents at known address before agency could utilize alternative methods of providing notice). Based upon our review of the record, we cannot say that the court committed an abuse of discretion or error of law in reaching its conclusions regarding DHS's good faith efforts. ***See Adoption of C.M., supra***. Consequently, we affirm the decrees terminating Mother's parental rights and the orders changing the placement goals to adoption.

Decrees and orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/23/2024